Donald SIMONETTI and Donald P. Medred, individually and as representatives of the Deer Lakes Taxpayer's Coalition, and the Township of West Deer, Petitioners,

v.

COMMONWEALTH of Pennsylvania, DEPARTMENT OF COMMUNITY AFFAIRS, and Deer Lakes School District, Respondents.

Commonwealth Court of Pennsylvania.

Argued Nov. 1, 1994.
Decided Dec. 8, 1994.

W. Timothy Barry and Matthew J. Carl, for petitioners.

Christopher Brewer, for respondents.

Before PELLEGRINI and FRIEDMAN, JJ., and NARICK, Senior Judge.

NARICK, Senior Judge.

Donald Simonetti and Donald P. Medred, individually and as representatives of the Deer Lakes Taxpayer's Coalition (Petitioners) appeal from an order of the Department of Community Affairs (DCA) granting the motion of Deer Lakes School District (School District) to dismiss Petitioners' complaint.

This dispute grows out of the effort of the Townships of East Deer and Frazer to secede from the School District and merge with a neighboring school district. A petition was submitted to the Court of Common Pleas of Allegheny County which approved the petition and certified it to the Pennsylvania Department of Education, where it is now under review.

On August 4, 1994, the School District passed a resolution at a special meeting authorizing the incurring of a nonelectoral bonded debt in the amount of $19,000,000.00.

Subsequently, it filed an application for approval of general obligation bonds to the Department pursuant to Section 411 of the Local Government Unit Debt Act (Debt Act), 53 P.S. § 6780.161. Petitioners filed a complaint asserting the invalidity of the proceedings, and the School District responded with a motion to dismiss. Petitioners were granted leave to file an amended complaint, and oral argument before the DCA took place on September 14, 1994. At oral argument, the Township of West Deer appeared and filed a petition to intervene, which was granted. The School District's motion to dismiss was granted by order and opinion of the DCA.

The Debt Act provides a means by which taxpayers and other interested parties may challenge the validity of the proceedings in which a local government unit incurs bonded debt. 53 P.S. § 6780-401(a). However, this challenge is very narrowly circumscribed, restricting inquiry into procedural and substantive matters *arising from proceedings of the local government unit taken pursuant to the Debt Act* and involving only: (1) the regularity of the proceedings; (2) the validity of the bonds; and (3) the legality of the purpose for which such obligations are to be issued. 53 P.S. § 6780-401(b). On appeal to this Court, our scope of review is restricted to whether constitutional rights were violated, an error of law was committed, or whether findings of fact are supported by substantial evidence. 2 Pa.C.S. § 704; *Property Owners, Residents and/or Taxpayers of Pleasant Valley School District v. Pleasant Valley School District*, 100 Pa.Commonwealth Ct. 513, 515 A.2d 85 (1986).

Petitioners first maintain that the petition to secede clearly affects the validity of the bond issue, as well as the regularity of the proceedings, by drastically reducing the tax base of the School District. Therefore, the DCA's failure to consider the effect of the pending petition means that its decision was not supported by substantial evidence and that Petitioners should have been afforded an evidentiary hearing. The trial court acknowledged that if those who seek to secede are successful it will have an impact on the School District; however, citing *Pleasant Valley*, the DCA concluded that the Debt Act does not authorize the DCA to consider pending or potential future occurrences in determining the validity of the application.

The case law is clear that the Debt Act is concerned exclusively with compliance by the local government unit, in this case, the School Board, with the proceedings mandated therein. *Pleasant Valley*. Those proceedings are the steps necessary to gain approval of a bond issue. *McMaster v. Department of Community Affairs*, 148 Pa.Commonwealth Ct. 206, 610 A.2d 525 *appeal denied*, 533 Pa. 639, 621 A.2d 583 (1993).

Petitioners argue that under Section 102(c)(3) of the Debt Act,[1] the DCA must consider the petition to secede in determining the borrowing base for calculating the debt limits; however, no such requirement is found in this section. Instead, the reorganization of the government unit is only important in determining the borrowing base if such reorganization of the geopolitical boundaries occurred *prior* to the borrowing. Since consideration of future reorganization is not required, the DCA may not consider such reorganization when determining compliance with the Debt Act.

We have held that the determination of whether a decision to incur non-electoral bonded debt is wise or necessary is beyond the authority granted to DCA. *Pleasant Valley*. The wisdom of the School District's decision to incur this debt during the pendency of a secession petition is subject to debate in the public meetings of the school board, while the DCA is concerned exclusively with compliance by the School District with the procedures mandated by the Debt Act. A requirement that an evidentiary hearing be held in all instances would permit disgruntled taxpayers, who were unable to convince the school district that its decision was unwise or incorrect, to raise legal roadblocks which would delay or even block such a decision. *Bethel Park Citizens for Better Education Less Taxes (BELT) v. Department of Community Affairs*, 128 Pa.Commonwealth Ct. 439, 563 A.2d 969 (1989). In

1.   53 P.S. § 6780-2(c)(3).

general, administrative and judicial authorities will neither invade nor supplant the legislative competence of the local government unit, absent a showing of fraud or abuse. *Id.* Here, there was no such showing, and therefore the DCA properly held that it did not have the authority to consider the effect of the pending petition. Moreover, because this argument presents a purely legal question concerning the DCA's jurisdiction, and because the DCA properly determined that it did not have such jurisdiction, no evidentiary hearing was required.

■ Next, Petitioner's claim that there are inconsistencies between the amount of state reimbursement claimed in the School District's Debt Act resolution incurring the bond indebtedness and its Act 34 statement. Petitioners allege that in the former, it stated that effective state reimbursement will be 30% and in the latter, the reimbursable percentage is given as 21.94%. Petitioners claim that an evidentiary hearing was required on this issue. Because this allegedly affects the validity of the bonds, Petitioners claim that dismissal of the petition was not supported by substantial evidence.

However, this alleged inconsistency arises only if the Debt Act resolution is compared with documents which are part of the Act 34 statement. This statement is prepared by the School District to satisfy project approval requirements of the Public School Code and the Pennsylvania Department of Education. Since the Act 34 statement was not part of the proceedings under the Debt Act, and the DCA is exclusively concerned with the compliance by the School Board with the proceedings mandated by the Debt Act, the DCA rightly determined that this document was beyond its legal purview. We addressed a similar issue in *North Pocono Taxpayers Association v. Department of Community Affairs,* 156 Pa.Commonwealth Ct. 146, 625 A.2d 1343 (1993), where it was held that DCA properly excluded evidence of an alleged fraudulent misrepresentation on a prospectus, which was adopted as an accurate statement of the financial information in the resolution authorizing the issuance of the bonds

for the school district, because this prospectus was not filed with the DCA, nor did the Debt Act require such filing.

Moreover, as stated earlier, only if fraudulent conduct is alleged and supported by specific allegations, is an evidentiary hearing before the DCA appropriate, as fraud goes to "the heart of the legality of the proceedings." *Bethel Park,* 128 Pa.Commonwealth Ct. at 444–445, 563 A.2d at 972. Petitioners have not alleged that these proceedings were prepared as a result of fraud on the part of any party, and without an allegation and some evidence of fraud we may not look beyond the four corners of the documents filed with the application. *McMaster.*

■ Next, Petitioners claim that there was insufficient information in the School District's application to the DCA, particularly with respect to the exact amount of the bond issue, the purchase price, and the final financing terms. The DCA held that the School District published a revised final notice which included a maximum purchase price for the issue and interest rates as required by Section 103 of the Debt Act.[2] Under the authority given to the DCA to prescribe rules and regulations regarding filings to be submitted pursuant to the Debt Act, 53 P.S. § 6780–360, the DCA has consistently held that specifying maximum terms for the bond issue, including the amount of the bond, the purchase price and the final financing terms is sufficient to give proper notice to the public and meet the requirements of the Debt Act. These technical practicalities of debt management are the very matters which come best within the DCA's expertise and for which the General Assembly empowered the DCA to administer. Moreover, by specifically contemplating the filing of post-closing reports, Section 802 of the Debt Act[3] illustrates that debt proceedings, as submitted for DCA approval, may not be final in every detail.

Therefore, we affirm the DCA's finding that filings presented to the DCA were sufficient under the Debt Act to give proper notice to the public and meet the procedural

**2.** 53 P.S. § 6780–3.

**3.** 53 P.S. § 6780–352.

requirements of the Debt Act, and, therefore, there was neither an error of law nor an insufficiency of evidence to support the DCA's decision to dismiss Petitioners' complaint.

Accordingly, we affirm the DCA's order granting the School District's motion to dismiss Petitioners' complaint.

### ORDER

AND NOW, this 8th day of December, 1994, the order of the Department of Community Affairs in the above-captioned matter is hereby affirmed.