**AIR–SERV GROUP, LLC, Petitioner**

v.

**COMMONWEALTH of Pennsylvania, Respondent.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 2010.
Decided April 14, 2011.

Dan A. Schulder, Philadelphia, for petitioner.

Jo Ann P. Collins, Senior Dep. Attorney General, Harrisburg, for respondent.

BEFORE: LEADBETTER, President Judge, and McCULLOUGH, Judge, and FRIEDMAN, Senior Judge.

OPINION BY Judge McCULLOUGH.

Air–Serv Group, LLC (ASG) petitions for review of the May 21, 2008, order of the Board of Finance and Revenue, which sustained an order of the Pennsylvania Department of Revenue's Board of Appeals (Board) denying ASG's petition for a sales tax refund.

ASG owns, installs, maintains, and services coin operated air vending machines, which are located in gas stations and convenience stores.[1] The air vending machines operate as follows:

4. ... When activated, [ASG's] air vending machines pump air from the atmosphere through a compressor. The compressed air is pumped through a hose into customers' automobile tires or other inflatable objects. The air vending machines do not dispense stored compressed air.

5. [ASG] charges a fee for the right to use the air vending machine for a specific number of minutes, normally three minutes. During the period in question, [ASG] charged customers 75 cents ($0.75) to operate the air vending machine for the designated number of minutes. The charge does not vary by the amount of the air placed into a tire or tires or the time during which the pump is operated. The charge relates to the time the air vending machine is available to perform as stated above.

6. [ASG] pays nothing for the air that is taken from the atmosphere. Over time, the air that is pumped into a cus-

---

1. ASG also owns coin-operated vacuum vending machines. However, the parties stipulated that coin operated vacuum vending machines are not at issue in this case, (Stipulation ¶ 3), and ASG concedes that sales from coin-operated vacuum vending machines are subject to the sales tax. (ASG's Brief at 7, n. 3.)

tomer's tire or other inflatable device returns to the atmosphere....

(Stipulation of Facts, ¶¶ 4–6.)

On or about December 16, 1999, following a request by ASG, the Pennsylvania Department of Revenue (Department) issued a private letter ruling (the 1999 PLR) in which it concluded that sales from air vending machines are not subject to sales tax under section 202(a) of the Tax Reform Code of 1971 (Code).[2] Based on that ruling, ASG did not charge or collect sales tax from its customers or remit any monies to the Department based on receipts from the machines. The 1999 PLR was valid for a period of five years.

The 1999 PLR expired on December 15, 2004. On September 13, 2005, ASG filed a request with the Department to renew the 1999 PLR for a second five-year period. However, the Department advised ASG that it no longer had access to ASG's original request and asked ASG to submit a new request for a private letter ruling. ASG did so on November 21, 2005.

By letter dated January 25, 2006, the Department issued a new private letter ruling (the 2006 PLR), in which the Department concluded that sales from ASG's air vending machines are subject to the sales tax. The Department relied upon *Commonwealth v. Air Products and Chemicals, Inc.*, 475 Pa. 318, 380 A.2d 741 (1977), which held that the act of separating atmospheric air into its constituent gases constitutes manufacturing. In *Air Products*, our Supreme Court considered whether on-site "customer stations" for providing gas products constituted manufacturing. The issue before the court was described as follows:

Air Products' business of separating from the atmosphere and converting into liquid and thence into gas the component elements is, all would concede, manufacturing.... Our initial inquiry, however, is whether that aspect of a customer station which executes the last step of the process—transforming the liquid product to a gas with the proper temperature and pressure—is, standing alone, within the definition.

*Id.*, 475 Pa. at 323–24, 380 A.2d at 743 (footnote omitted). The court held that, despite having a storage function, customer stations also serve a manufacturing purpose because they convert a liquid substance into a gas at a certain flow and temperature. The court explained:

Our guide here must be the two-part test peculiar to the Tax Act of 1963, and we have no doubt that it has been met in this case: The type of activity performed at the customer station, i.e., conversion from liquid to gas, even if not 'manufacturing, fabricating, compounding, [or] processing,' is at least an 'operation' within the broad dictionary definition given that word in [ *Commonwealth v.* ] *Sitkin's Junk* [ *Co.*, 412 Pa. 132, 194 A.2d 199 (1963) ] ..., i.e., 'the action of making or producing something.' 412 Pa. at 139, 194 A.2d at 203. Similarly, the second part of the test is satisfied since the result of the process which the liquid product undergoes in the customer station is to place it 'in a form, composition or character different from that in which it is acquired.'

*Id.*, 475 Pa. at 324, 380 A.2d at 744. Because the separation of atmospheric air into its constituent gases is manufacturing under section 201(c) of the Code, 72 P.S. § 7201(c), the Department reasoned that

**2.** Section 202(a) of the Act of March 4, 1971, P.L. 6, *as amended*, 72 P.S. § 7202(a), imposes "upon each separate sale at retail of *tangible personal property or services* ... a tax of six per cent of the purchase price...."

atmospheric air must be tangible personal property.

When the 1999 PLR expired in December of 2004, ASG commenced paying sales tax on the receipts from its air vending machines. ASG paid the tax itself and did not increase the fee charged to its customers. Subsequently, on May 17, 2007, ASG filed a petition with the Board for a refund of the sales tax it paid on sales from its vending machines in the amount of $253,831.75. Following a hearing, the Board denied the petition for the reasons set forth in the 2006 PLR.

ASG appealed to the Board of Finance and Revenue, which concluded that ASG failed to establish that sales from the air vending machines are not subject to the sales tax. The members of the Board of Finance and Revenue were, however, equally divided: the Attorney General, Secretary of Revenue, and General Counsel voted to sustain the Board's order; the State Treasurer, Auditor General, and Secretary of the Commonwealth dissented. ASG's petition for review to this Court ensued.

■ ASG raises two issues for review,[3] both of which are of first impression: (1) whether dispensing air from an air vending machine is a sale of "tangible personal property" subject to the sales tax under section 202(a) of the Code, and (2) whether the process of using a vending machine to pump air is a service subject to the sales

tax as a "sale at retail" pursuant to section 202(a).[4]

This is a statutory construction case, and our goal in interpreting a statute is to ascertain and effectuate the intent of the legislature. *Dechert, LLP v. Commonwealth*, 606 Pa. 334, 998 A.2d 575 (2010). When the words of a statute are clear and free from all ambiguity, the letter of the statute is not to be disregarded under the pretext of pursuing its spirit. *Id.* Further, statutes imposing taxes are to be strictly construed, and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer; however, such doubt is only implicated after the court's efforts at statutory interpretation yield no definitive conclusion. *Id.*

**I.** *Is dispensing air from an air vending machine a sale of "tangible personal property" subject to the sales tax under section 202(a) of the Code?*

■ The term "tangible personal property" is defined by the Code as follows:
(m) "Tangible personal property." *Corporeal personal property including*, but not limited to, goods, wares, merchandise, *steam and natural and manufactured and bottled gas for non-residential use, electricity for non-residential use*, prepaid telecommunications, premium cable or premium video programming service, spirituous or vinous liquor and malt or brewed beverages and soft

---

**3.** In appeals from decisions of the Board of Finance and Revenue, our scope of review is *de novo* and this Court functions as a trial court, even though such cases are heard in our appellate jurisdiction. *All Staffing, Inc. v. Commonwealth*, 987 A.2d 849 (Pa.Cmwlth. 2010). No record is certified to this court by the Board; questions raised by the petition for review are determined by the record made before the court or on stipulated facts. *Id.*

In this case, the parties filed a stipulation of facts. The stipulation is binding and conclu-

sive in this matter, although we may draw our own legal conclusions from those facts. *Id.*

**4.** Although the Board of Finance and Revenue did not consider the question of whether air vending is a taxable service, the parties raise the issue in this appeal, and the Commonwealth argues the theory of sale at retail of services as an alternative ground for imposing the sales tax.

drinks, interstate telecommunications service originating or terminating in the Commonwealth and charged to a service address in this Commonwealth, intrastate telecommunications service with the exception of (i) subscriber line charges and basic local telephone service for residential use and (ii) charges for telephone calls paid for by inserting money into a telephone accepting direct deposits of money to operate, provided further, the service address of any intrastate telecommunications service is deemed to be within this Commonwealth or within a political subdivision, regardless of how or where billed or paid. In the case of any such interstate or intrastate telecommunications service, any charge paid through a credit or payment mechanism which does not relate to a service address, such as a bank, travel, credit or debit card, but not including prepaid telecommunications, is deemed attributable to the address of origination of the telecommunications service.

Section 201(m) of the Code, 72 P.S. § 7201(m) (emphasis added). The meaning of the term "tangible personal property" is further explained by the following regulation:

(3) The term tangible personal property includes, but is not limited to, the following:

(i) Goods, wares and merchandise, other than household supplies purchased from retail establishments for residential consumption.

(ii) *Steam*, electricity and fuel oil, when not purchased directly by the user solely for his own residential use.

(iii) *Natural, manufactured or bottled gas when not purchased directly by the user solely for his own residential use.*

(iv) Intrastate telephone and telegraph service for nonresidential use.

(v) Spirituous or vinous liquor.

(vi) Malt and brewed beverages.

(vii) Soft drinks.

61 Pa.Code § 31.1(3) (emphasis added).

ASG argues that the air dispensed from its air vending machines is not tangible personal property because: (1) the Supreme Court's decision in *Air Products* stands for the proposition that atmospheric air is not tangible personal property; (2) atmospheric air is outside the definition of corporeal personal property set forth in section 201(m) of the Code; (3) air is not like the steam and natural and manufactured and bottled gas described in the statute; and (4) the atmosphere is not personal property.

On the other hand, the Commonwealth contends that compressed air is tangible and corporeal in nature because it can be perceived, felt, and possessed, and that pressurized air delivered from ASG's vending machines is not the equivalent of atmospheric air. The Commonwealth asserts that the fact that "air" is not expressly included in the Code does not preclude taxation. In addition, the Commonwealth observes that the Supreme Court never stated in *Air Products* that air is not tangible personal property. The Commonwealth also asserts that the Department's interpretation of the law is entitled to deference.

The stipulated facts reflect that air vending machines operate by pumping air from the atmosphere through a compressor, which forces air into tires or other inflatable objects. The parties also stipulated that the air vending machines do not dispense stored compressed air. Moreover, the parties attached as an exhibit to the stipulations the expert affidavit of William S. Otte, Jr., a mechanical engineer who works in the air compressor industry. Otte opined that air compressors do not change the chemical composition of air or

the mixture of the air that is pumped through the device but merely compress the air to a selected number of pounds per square inch. Although the parties did not stipulate to Otte's opinions, we find Otte's opinions to be credible and accept them as fact.

The Code, regulations, and case law indicate that air taken from the atmosphere is taxable only when it has been changed, separated, processed and/or bottled and then sold commercially. Section 201(m) of the Code and the applicable regulations specifically identify as taxable specific products such as steam and natural and manufactured and bottled gases that are sold for non-residential purposes. Air that exists freely in the atmosphere is quite unlike products such as steam, natural gas, manufactured gas, and bottled gas, all of which are commercially produced, distributed, and/or packaged.[5] Further, our Supreme Court's decision in *Air Products* is instructive. *Air Products* concluded that the process of creating gas products via an industrial process where air is cooled to such a degree that it becomes a liquid, thereby allowing the air to separate into its component gases, and the process of converting such liquids into gases, constituted manufacturing. Although the Supreme Court did not decide whether atmospheric air is tangible personal property, *Air Products* illustrates that a manufactured product did not come into existence until air was transformed by an industrial process.

Moreover, for air to be taxable it must be "tangible *personal property.*" The term "personal property" is defined as "any moveable or intangible thing that is *subject to ownership* and not classified as real property." Black's Law Dictionary 1337 (9th ed.2009) (emphasis added). While air is a material substance, air has been historically treated as *res communes,* which means "[t]hings common to all; things that cannot be owned or appropriated, such as light, air, and the sea."

---

5. We agree with ASG that the term "natural" gas in the statute and regulations refers to natural gas fuel, and not the atmosphere. Our Supreme Court previously applied section 201(m) to natural gas fuel purchased for commercial use. *See Aldine Apartments, Inc. v. Commonwealth,* 493 Pa. 480, 426 A.2d 1118 (1981) (holding that the sales tax applied to natural gas purchased by a landlord from the Philadelphia Gas Works for use in an apartment complex). In addition, we find the Code and Department's regulations pertaining to sales tax exemptions for steam, gas, electricity, fuel oil and kerosene to be enlightening. Section 204(5) of the Code, 72 P.S. § 7204(5), provides that the sales tax shall not be imposed on the "sale at retail or use of steam, *natural* and manufactured and bottled *gas,* fuel oil, electricity or interstate subscriber line charges, basic local telephone service when purchased directly by the user for his own residential use...." (Emphasis added.) This statute is amplified by the following regulations:

(1) The purchase or use of steam, *natural* and manufactured *gas* and electricity, through a metered device; bottled gas; fuel oil; or kerosene by a residential purchaser solely for the purchaser's own residential use is exempt from tax.

(2) The purchase or use of steam, *natural* and manufactured *gas* and electricity, through a metered device; bottled gas; fuel oil; or kerosene other than by a residential purchaser for the purchaser's own residential use, is presumed to be made for a commercial use and is subject to tax, unless the purchaser is entitled to claim an exemption under subsection (d).

(3) The purchase or use of steam, *natural* and manufactured *gas* and electricity, through a metered device; bottled gas; fuel oil; or kerosene; by a residential purchaser for both the purchaser's own residential use and a commercial use is presumed to be made for commercial use and is subject to tax....

61 Pa.Code § 32.25(b)(1–3) (emphasis added). Thus, the Code and the regulations clearly treat natural gas as a fuel and/or utility service.

Black's Law Dictionary 1421, 1427 (9th ed.2009). *See Who Owns the Sky? Seventh Annual Lloyd K. Garrison Lecture on Environmental Law,* 18 Pace Envtl. L.Rev. 227 (2001). This principle is consistent with Article I, § 27 of the Pennsylvania Constitution, which declares that "Pennsylvania's public natural resources are the common property of all the people, including generations yet to come." Thus, because the atmosphere is not subject to ownership by any private individual, group, or entity, we conclude that it is not personal property.[6]

Here, ASG's vending machines do not sell a product that has been changed, altered, or bottled, but rather draw air freely from the atmosphere via a compressor. As observed by Otte, compressed air is not chemically different from atmospheric air; the only distinction is the pressure of the air. Also, ASG stipulated that it is charging a fee only for the right ·to use the machine for a fixed number of minutes. (Stipulation ¶ 5.) ASG is not charging customers for the air itself. Therefore, we conclude that the air dispensed from ASG's air vending machines is not tangible personal property subject to the sales tax.

**II.** *Is the process of using a vending machine to pump air a service subject to the sales tax as a "sale at retail" pursuant to section 202(a)?*

■ ASG contends that the process of using a vending machine to pump air is not a service subject to the sales tax under Section 202(a) of the Code, which imposes the sales tax "upon each separate sale at retail of ... services...."

The term "sale at retail" is defined by the Code, in pertinent part, as follows:

(3) The rendition for a consideration of the service of—

(i) *Washing, cleaning, waxing, polishing or lubricating of motor vehicles* of another, whether or not any tangible personal property is transferred in conjunction therewith; and

(ii) Inspecting motor vehicles pursuant to the mandatory requirements of "The Vehicle Code."

(4) The rendition for a consideration of the service of *repairing, altering, mending,* pressing, fitting, dyeing, laundering, drycleaning or cleaning *tangible personal property* other than wearing apparel or shoes, or applying or installing tangible personal property as a repair or replacement part of other tangible personal property except wearing apparel or shoes for a consideration, whether or not the services are performed directly or by any means other than by coin-operated self-service laundry equipment for wearing apparel or household goods and whether or not any tangible personal property is transferred in conjunction therewith, except such services as are rendered in the construction, reconstruction, remodeling, repair or maintenance of real estate: Provided, however, That this subclause shall not be deemed to impose tax upon such services in the preparation for sale of new items which are excluded from the tax under clause (26) of section 204, or upon diaper service.

Section 201(k)(3), (4) of the Code, 72 P.S. § 7201(k)(3), (4). The Department's regulations state that the following services are subject to the sales tax:

(i) *Cleaning, inspecting, lubricating, polishing, washing or waxing motor ve-*

---

**6.** We presume that the legislature does not intend a result that is absurd, impossible of execution, or unreasonable. Section 1922(1) of the Statutory Construction Act of 1972(SCA), 1 Pa.C.S. § 1922(1).

*hicles whether performed directly or by coin-operated equipment.*

(ii) Wrapping or packaging tangible personal property.

(iii) Applying or installing tangible personal property as a repair or replacement part of personal property other than clothing or shoes.

(iv) *Altering,* cleaning, dry-cleaning, dyeing, fitting, laundering, *mending,* pressing *or repairing tangible personal property* other than clothing or shoes.

(v) The imprinting or printing of tangible personal property furnished by others.

(vi) The labor or services billed by the vendor for delivering, installing or applying tangible personal property sold by the vendor even if the services are contracted for separately.

61 Pa.Code § 31.1(4) (emphasis added).

ASG argues that the fee charged for the air vending service is not a sale at retail because air is not tangible personal property and the service provided by ASG is not enumerated in section 201(k) of the Code. Also, ASG asserts that the charge is related to the amount of time the air vending machine operates and that the service is the opportunity during that time to inject air from the atmosphere into a tire or other inflatable device.

The Commonwealth, on the other hand, argues that a customer inflating a flat tire is engaged in altering, mending or repairing tangible personal property as defined in section 201(k)(4) of the Code and 61 Pa.Code § 31.1(4). Other coin-operated services for motor vehicles are subject to the sales tax, such as self-service car wash sales. *See McCarthy Car Wash, Inc. v. Commonwealth,* 94 Pa.Cmwlth. 551, 503 A.2d 1088 (1986) (holding that services provided at a self-service car wash constituted a "sale at retail" for sales tax purposes). Further, the Commonwealth compares air vending machines to vacuum vending machines because both the 1999 PLR and 2006 PLR subject sales from such machines to tax.

We observe that air vending services are not within the specifically enumerated taxable services set forth in either section 201(k) of the Code or 61 Pa.Code § 31.1(4), and we conclude that air vending is not analogous to any of the services enumerated in the statute and regulation. Moreover, the parties did not stipulate or submit evidence to show that ASG's customers use air vending machines to "alter, repair, or mend" damaged tires or other inflatable objects as such terms are used in the Code or in any other manner. The act of injecting air into an inflatable object is clearly not comparable to the types of taxable services specifically set forth in the statute and regulations—repairing, altering, mending, pressing, fitting, dyeing, laundering, cleaning, and dry cleaning—most of which apply to textiles, and not inflatable devices.[7] Rather, the parties stipulated that ASG is selling its customers an entirely different kind of service: the opportunity to use the vending machine's compressor to pump air for a fixed period of time. (Stipulation ¶ 5.)

Although the Commonwealth correctly observes that coin operated services such

7. We observe that the specific words in the Code and regulations control our construction of the general terms such as "service" and "tangible personal property" pursuant to the doctrine of *ejusdem generis* and section 1903(b) of the SCA, 1 Pa.C.S. § 1903(b). *Independent Oil & Gas Association of Pennsylvania v. Board of Assessment Appeals of Fayette*

*County,* 572 Pa. 240, 814 A.2d 180 (2002). Moreover, we are mindful that statutes imposing taxes are to be strictly construed, and any doubt or uncertainty as to the imposition of a tax must be resolved in favor of the taxpayer. Section 1928(b) of the SCA, 1 Pa.C.S. § 1928(b).

as self-service car washes are taxable, the legislature has specifically provided that cleaning, inspecting, lubricating, polishing, washing or waxing motor vehicles services, whether performed directly or by coin-operated equipment, are taxable. Section 201(k)(3)(i) of the Code and 61 Pa.Code § 31.1(4)(i). The legislature has not simi-larly provided that coin operated air vending services are taxable. Therefore, we conclude that the process of using a vending machine to pump air is not a taxable service within the definition of "sale at retail."[8]

The Commonwealth argues that the Board of Finance and Revenue's interpre-

---

8. The dissent would affirm the Board of Finance and Revenue on the ground that transactions here are in the nature of a rental or license, which is subject to the sales tax pursuant to section 201(k)(1) of the Code, 72 P.S. § 7201(k)(1), and 61 Pa.Code § 31.4(a). The dissent recognizes that the parties did not raise and brief this question, but would reach it on the theory that the Court may affirm for any reason and is not limited to the grounds raised by the parties. However, this approach is both procedurally and legally problematic.

This is not a garden variety appeal, where we have a trial court or agency record and apply a conventional appellate scope and standard of review. Rather, appeals from Board of Finance and Revenue decisions are heard *de novo* based on the record created before this Court or on stipulated facts. *Tool Sales & Service Co. v. Board of Finance & Revenue*, 536 Pa. 10, 637 A.2d 607 (1993). Hence, we are functioning effectively as a trial court. *Unisys Corp. v. Commonwealth*, 571 Pa. 139, 812 A.2d 448 (2002).

In light of the foregoing, it would be unfair to raise an issue *sua sponte* without first giving the parties an opportunity to brief and argue it. The parties also entered into a stipulation of facts without this issue in mind and never developed a factual record on the question of whether the use of air vending machines constitutes a rental or license. Because notice and an opportunity to be heard form the basis of due process, *Honey Brook Water Co. v. Pennsylvania Public Utility Commission*, 167 Pa.Cmwlth. 140, 647 A.2d 653 (1994), the parties are entitled to notice that the rental/license issue is being considered by the Court and an opportunity to present evidence and argument on the issue.

In addition, our scope of review is limited to questions "raised at any stage of the proceedings below...." Pa. R.A.P. 1571(h)(1); *First Union National Bank v. Commonwealth*, 867 A.2d 711 (Pa.Cmwlth.2005). The record does not indicate that the question of whether the use of air vending machines constitutes a license or rental was raised during the administrative proceedings in this case and, therefore, the question is not before us.

Turning to the merits of the dissenting view, section 201(k)(1) of the Code and 61 Pa.Code § 31.4(a) provide that transfers of "ownership," "custody," or "possession" of tangible personal property, including rentals and licenses to use tangible personal property, are subject to the sales tax. The stipulated facts do not show that the use of an air vending machine results in a transfer of custody or possession to the purchaser, and it is obvious that a vending machine is not the type of device that a purchaser would or could remove from the premises. Moreover, the parties stipulated that ASG's air vending machines are installed in convenience stores and gas stations, which raises the possibility that the machines might be fixtures, a form of real property, and not personal property at all. *See LoFurno v. Garnet Valley School District*, 904 A.2d 980 (Pa.Cmwlth.2006). The question of whether an item is a fixture or personal property is decided based on facts, *Wilson v. Philadelphia Housing Authority*, 735 A.2d 172 (Pa.Cmwlth.1999), and as we explained in *LoFurno*, such facts include whether an item is annexed to the property, whether it can be removed without injury to the real estate or the item, and the intent of the parties at the time of annexation. Because they did not raise the rental/license issue, the parties did not stipulate to any facts pertaining to whether their vending machines are fixtures or personalty. For these reasons, the state of the record precludes this Court from reaching the issue of whether the use of an air vending machine is a taxable rental or license.

Furthermore, a fair reading of section 201(k)(1) of the Code and 61 Pa.Code § 31.4(a) does not establish that transactions involving air vending machines constitute a taxable rental or license. Recognizing that taxing statutes must be strictly construed, we conclude that the statute does not support this

tation of the law is entitled to deference. However, this is a statutory interpretation case and our standard of review over questions of law is plenary. *See Commonwealth v. Gilmour Manufacturing Co.*, 573 Pa. 143, 822 A.2d 676 (2003) (in a challenge to the validity of a regulation, our Supreme Court stated that the meaning of a statute is essentially a question of law for the court, and, when convinced that the interpretative regulation adopted by an administrative agency is unwise or violative of legislative intent, courts disregard the regulation). Because its decision is not supported by the statute, we do not defer to the Board of Finance and Revenue's interpretation of the Code and regulations.

Accordingly, we reverse.

Senior Judge FRIEDMAN concurs in result only.

theory of taxation. Even if the statute is ambiguous, any ambiguity in the statute must be resolved in favor of the taxpayer, and not the Commonwealth. Section 1928(b) of the SCA, 1 Pa.C.S. § 1928(b).

Considering that we are sitting essentially as a trial court, we also observe that the result proposed by the dissent is analogous to granting summary judgment on behalf of the Commonwealth on a theory not raised by motion or developed in the summary judgment record. In *Yount v. Department of Corrections*, 600 Pa. 418, 966 A.2d 1115 (2009), our Supreme Court stated the following:

> Appellant asserts granting summary judgment on an issue raised *sua sponte* is inappropriate.
> This principle is well established in the Superior and Commonwealth Courts. *See, e.g., MacGregor v. Mediq, Inc.*, 395 Pa.Super. 221, 576 A.2d 1123 (Pa.Super.1990); *Wojciechowski v. Murray*, 345 Pa.Super. 138, 497 A.2d 1342 (Pa.Super.1985); *O'Hare v. County of Northampton*, 782 A.2d 7 (Pa.Cmwlth.2001); *Travers v. Cameron County School District*, 117 Pa. Commw. 606, 544 A.2d 547 (Pa.Cmwlth.1988). These cases are grounded in a concern that trial courts should not 'act as the defendant's advocate.' *O'Hare*, at 15. For a

**ORDER**

AND NOW, this 14th day of April, 2011, the May 21, 2008, order of the Board of Finance and Revenue is hereby REVERSED.

This order shall become final unless exceptions are filed within thirty days pursuant to Pa. R.A.P. 1571(i).

DISSENTING OPINION BY President Judge LEADBETTER.

While I agree with much of the majority's analysis, I must respectfully dissent because I would affirm the order of the Board of Appeals (Board) on alternate grounds.[1]

Section 202(a) of the Tax Reform Code

> trial court to raise an argument in favor of summary judgment *sua sponte* and grant summary judgment thereon *risks depriving the court the benefit of advocacy on the issue, and depriving the parties the opportunity to be heard. See Luitweiler v. Northchester Corp.*, 456 Pa. 530, 319 A.2d 899, 901 n. 5 (Pa.1974) (holding it inappropriate for trial court to raise failure to state claim upon which relief may be granted *sua sponte* ).
> *Id.*, 600 Pa. at 424, 966 A.2d at 1119 (emphasis added). Therefore, the dissent implicates the same problems identified in *Yount*—depriving the court the benefit of advocacy on the issue, depriving the parties the opportunity to be heard, and the Court acting as an advocate for the Commonwealth.

1. It is well settled that this Court may affirm for any reason and is not limited to grounds raised by the parties. *McAdoo Borough v. Pa. Labor Relations Bd.*, 506 Pa. 422, 485 A.2d 761 (1984), citing *Commonwealth v. Meyer*, 488 Pa. 297, 412 A.2d 517 (1980); *Commonwealth v. Dancer*, 460 Pa. 95, 331 A.2d 435 (1975); *Gilbert v. Korvette, Inc.*, 457 Pa. 602, 327 A.2d 94 (1974); *Prynn's Estate*, 455 Pa. 192, 315 A.2d 265 (1974); *Appeal of Kit–Mar Builders, Inc.*, 439 Pa. 466, 268 A.2d 765 (1970).

of 1971 [2] (Code) makes taxable "each separate sale at retail of tangible personal property or services." 72 P.S. § 7202(a). The majority, as well as the Board and the parties, characterize the transactions in this case as involving the sale of air. I, however, believe that the transactions at issue are better characterized as the rental of air pumps. As I believe it is indisputable that air pumps are tangible personal property, this view of the case simplifies the matter considerably.

The stipulated facts in this case make clear that the activity at issue is not the sale of air, but rather the payment for the use of the equipment that can be used to pump air into a tire. Specifically, Paragraph 5 of the Stipulation of Facts states that:

> [Air–Serv Group (ASG)] charges a fee for the right to use the air vending machine for a specific number of minutes ... The charge does not vary by the amount of the air placed into a tire or tires or the time during which the pump is operated. The charge relates to the time the air vending machine is available to perform as stated above.

If ASG were selling air, one would expect the amount charged to vary with the amount of air sold. However, that is not the case, as ASG is not selling air, it is selling the right to use equipment which can be used to pump air into a tire or tires. The fee is flat because it pays for the use of the equipment for a set period of time.

It is well established that the grant of a right to use personal property in exchange for payment is subject to tax. Section 201(k)(1) of the Code, 72 P.S. § 7201(k)(1), defines "sale at retail" as:

> Any transfer, for a consideration, of the ownership, custody or possession of tangible personal property, including the grant of a license to use or consume whether such transfer be absolute or conditional and by whatsoever means the same shall have been effected.

61 Pa.Code § 31.4(a) makes clear that:

> Transfers of possession or of custody of tangible personal property for consideration, by whatever means effected and irrespective of the terms employed by the parties to describe the transaction, are taxable. **The rental, lease or license to use or consume tangible personal property is subject to tax.** For example, when a machine shop grants to another the right to use its machinery on weekends for a fee, the transaction is taxable. Similarly, the grant of a right to use an electronic computer for a fee is subject to tax ...

(emphasis added). The right conveyed in this case is obviously quite short term and subject to a number of conditions (for example, the removal of the equipment from the premises would likely be frowned upon), so perhaps it is be better characterized as a license to use than a rental. Regardless of the precise characterization, however, I can see no difference between the grant of a right to use an air pump for a fee and the example of the "the grant of a right to use an electronic computer for a fee" given by the Code. 61 Pa.Code § 31.4(a).

Because I believe that the transactions at issue are taxable, I respectfully dissent.

---

2. Act of March 4, 1971, P.L. 6, *as amended.*